UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY,<br>Plaintiff,<br>- against -<br>SELMANAJ CORPORATION,<br>Defendant. | 25 Civ. 6482 (JGK) (GS)<br>REPORT AND RECOMMENDATION |

**GARY STEIN, United States Magistrate Judge.**

This action is before the Court for an inquest and report and recommendation on damages following entry of default judgment in favor of Plaintiff Arch Specialty Insurance Company ("Arch" or "Plaintiff") and against Defendant Selmanaj Corporation ("Selmanaj" or "Defendant"). For the reasons set forth below, the undersigned respectfully recommends that Arch be awarded $134,004 in damages, with prejudgment and postjudgment interest, and costs of $630.65, against Selmanaj for breach of contract.

## BACKGROUND

### A. Factual Background[1]

On March 19, 2018, Arch entered into an insurance policy with Selmanaj, a residential construction company based in New York, New York. (Compl. ¶¶ 2, 6;

[1] The relevant facts are taken primarily from the Complaint (Dkt. No. 1 ("Complaint" or "Compl."), the Declaration of Raymond J. Steer, Jr., Arch's Vice President of Billing and Operations, and accompanying exhibits (Dkt. No. 24 ("Steer Decl.")), the Declaration of Vitaly Vilenchik, Arch's counsel (Dkt. No. 25 ("Vilenchik Decl.")), and the Supplemental Declaration of Vilenchik (Dkt. No. 34 ("Supp. Decl.")).

Steer Decl. Ex. A (the "Policy") at 2). The Policy was a commercial general liability policy and covered the period from March 14, 2018 through March 14, 2019. (Compl. ¶¶ 6–7; Policy at 1). Arch fulfilled its contractual obligations and provided coverage pursuant to the Policy. (Compl. ¶ 8).

Pursuant to the Policy, the initial premiums paid to Arch were subject to audit and potential increase based on actual exposure. (*Id.* ¶¶ 9–10; Policy at 51 § IV ¶ 5; *see also* Policy at 36 § C ("[Arch] may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.")). The estimated exposure, used to set the initial premiums, was measured by Selmanaj's estimated payroll costs. (Supp. Decl. ¶¶ 27–28).

On May 15, 2019, Arch conducted an audit of Selmanaj. (Compl. ¶ 11; Steer Decl. ¶ 12; Steer Decl. Ex. B (the "Audit")). Based on the initial data submitted, Arch had estimated Selmanaj's payroll costs at $921,473. (Supp. Decl. ¶¶ 27–28; Audit at 1). However, the audit revealed that Selmanaj's actual costs during the policy period were $1,285,508.95, over 39% greater than estimated. (Supp. Decl. ¶¶ 27, 29; Audit at 1). Selmanaj's audit contact, its accountant Naum Rabinovitch, did not dispute these figures at the conclusion of the review. (Audit at 3).

Based on this audit, Arch calculated that Selmanaj owed an additional premium of $134,004. (Compl. ¶¶ 11–12; Steer Decl. ¶ 12; Steer Decl. Ex. C ("Audit Endorsement"); *see also* Supp. Decl. ¶¶ 12–41). In addition, Arch claimed that Selmanaj owes Arch an additional $5,051.95 in New York state taxes and fees

related to the additional premium. (Compl. ¶¶ 14–15; Steer Decl. ¶¶ 13–14; *see also* Supp. Decl. ¶¶ 42–50).

On August 14, 2019, Arch sent Selmanaj a demand for payment of the additional premium and state taxes and fees. (Compl. ¶ 13; Steer Decl. ¶ 15; Steer Decl. Ex. D (the "Demand")). Pursuant to the Demand, payment was due by no later than August 28, 2019. (Steer Decl. ¶ 16; Demand at 1). Selmanaj made no such payment. (Compl. ¶ 18; Steer Decl. ¶ 18).

### B. Procedural History

After commencing this action on August 6, 2025, Arch served Defendant with the Summons and Complaint on August 8, 2025. (Dkt. Nos. 1, 7). The Complaint asserts three causes of action for: (1) breach of contract, (2) unjust enrichment, and (3) account stated. (Compl. ¶¶ 5–26). Defendant has not appeared nor made any filings in the case.

The Clerk of Court issued a certificate of default against Defendant on September 11, 2025. (Dkt. No. 12). The next day, the Honorable John G. Koeltl *sua sponte* extended Defendant's deadline to answer Plaintiff's complaint to September 26, 2025. (Dkt. No. 13). Despite Plaintiff's service of that order on Defendant (Dkt. No. 14), no such answer was filed.

On November 3, 2025, Arch filed a proposed Order to Show Cause for a default judgment (Dkt. No. 23), alongside the Steer and Vilenchik Declarations (Dkt. Nos. 24, 25) and a proposed default judgment order (Dkt. No. 26). Judge Koeltl subsequently issued an order directing Selmanaj to show cause as to why

default should not be entered. (Dkt. No. 27). The Order to Show Cause was served on Defendant (Dkt. No. 29), but no response was made. On December 2, 2025, Judge Koeltl entered an order of default judgment against Selmanaj (Dkt. No. 30), and soon thereafter referred this action to the undersigned for an inquest into damages and report and recommendation (Dkt. No. 31).

On December 16, 2025, this Court directed Plaintiff to file any proposed findings of facts and conclusions of law concerning damages as well as any supporting materials by January 30, 2026, and for Defendant to file any responses and indicate whether it was requesting an in-court hearing into damages by February 20, 2026. (Dkt. No. 32). The Court noted that if a hearing was not requested, it would "conduct an inquest into damages and issue a report and recommendation based solely upon the written submissions of the parties." (*Id.*). The Order was served on Defendant on December 19, 2025. (Dkt. No. 33). No hearing was requested, and Arch submitted only the Supplemental Declaration from Vilenchik (Dkt. No. 34). Selmanaj has filed no opposition to Plaintiff's submissions and has failed to appear in this action as of the date of this Report and Recommendation.

## LEGAL STANDARDS

Under Rule 55 of the Federal Rules of Civil Procedure, a plaintiff may be granted a default judgment when the defendant fails to appear or defend against the action. Fed. R. Civ. P. 55(a)–(b); *see Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186

(2d Cir. 2015). Once a defendant has defaulted, the court must accept "as true the well-pleaded allegations in the Complaint, with the exception of those allegations relating to damages." *Yu v. Shanghai Dumpling, Inc.*, No. 19 Civ 7601 (ALC) (VF), 2023 WL 8438669, at *2 (S.D.N.Y. Oct. 5, 2023), *R&R adopted*, 2023 WL 7321595 (S.D.N.Y. Nov. 7, 2023); *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004))).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "Plaintiffs bear the burden of establishing [ ] entitlement to the amount of damages" sought, but are "'entitled to all reasonable inferences in [their] favor based upon the evidence submitted.'" *Baker v. Weber*, No. 19 Civ. 1093 (JPC) (GWG), 2022 WL 3589095, at *2 (S.D.N.Y. Aug. 23, 2022) (citation omitted), *R&R adopted,* 2023 WL 199009 (S.D.N.Y. Jan. 17, 2023). The calculation of damages involves "[1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under the rule." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). In addition, Federal Rule of Civil Procedure 54(c) "provides that '[a] default judgment must not differ in kind from, or exceed in amount, what is

demanded in the pleadings.'" *Mickalis Pawn Shop, LLC*, 645 F.3d at 128 n.16 (quoting Fed. R. Civ. P. 54(c)).

Finally, while Rule 55 allows the Court to "conduct hearings [to] determine the amount of damages," Fed. R. Civ. P. 55(b)(2)(B), a damages hearing is not required. The Court may conduct an inquest into damages based solely upon the written submissions of the parties. *Bricklayers & Allied Craftworkers*, 779 F.3d at 189; *see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); *K2M Design, Inc. v. Schmidt*, No. 22 Civ. 3069 (MKV) (GS), 2023 WL 10674525, at *8 (S.D.N.Y. Nov. 30, 2023) ("The Second Circuit has upheld damages determinations made on the basis of affidavits and other documentary evidence without a hearing as long as the Court is ensured that there was a basis for the damages specified in the default judgment.") (citations omitted), *R&R adopted*, 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024).

Both parties were given the opportunity to request an evidentiary hearing as to the issue of damages and neither party did so. (Dkt. No. 32). Defendant failed to submit any opposition or to respond to the judgment entered against it, and the Court has found it unnecessary to hear live testimony or otherwise hold a hearing to

determine Plaintiff's damages. Therefore, the Court has conducted its inquest based solely on Plaintiff's submissions.

## DISCUSSION

Plaintiff seeks $139,055.95 in damages based on its claims for breach of contract, unjust enrichment, and account stated. (Compl. ¶¶ 18, 22, 26). The Court discusses each claim below, ultimately finding that Plaintiff should be awarded $134,004 for its breach of contract claim, together with prejudgment interest, postjudgment interests, and costs.[2]

### A. Plaintiff's Breach of Contract Claim

Under New York law, "'a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages.'" *Vanek v. Samsung EMS Co. Ltd*, No. 23 Civ. 3127 (JGK) (RFT), 2024 WL 5245597, at *28 (S.D.N.Y. Oct. 15, 2024) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)), *R&R adopted as modified on other grounds*, 2024 WL 4894344 (S.D.N.Y. Nov. 26, 2024).[3]

---

[2] The Court has subject matter jurisdiction based on diversity of citizenship because Arch is incorporated under Missouri law and has its principal place of business in New Jersey, Selmanaj is incorporated in and has its principal place of business in New York, and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1–4). Personal jurisdiction exists because Selmanaj is a New York corporation.

[3] The Policy does not appear to contain a choice of law clause, and Arch's papers do not address what law applies to its claims. In the absence of any contrary indication, the Court applies the law of New York, where Selmanaj was based and the insurance risk was located. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 152 (2d Cir. 2008) ("In the insurance law context, New York recognizes the precept that a court should apply the local law of the state which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties." (citation omitted)).

Arch has satisfied each of these elements on its claim for breach of contract. The Complaint sufficiently alleges (and the subsequent Declarations and the exhibits attached thereto substantiate) that (1) a valid contract existed between Arch and Selmanaj, *i.e.*, the Policy (Compl. ¶¶ 6–7; Steer Decl. ¶¶ 5–6 and Ex. A), (2) Arch performed its part of the bargain by providing coverage to Selmanaj (Compl. ¶ 8; Steer Decl. ¶ 7), (3) Selmanaj breached the contract by failing to pay the additional premium (Compl. ¶¶ 11–18; Steer Decl. ¶¶ 9–18), and (4) Arch suffered damages as a result of this breach (Compl. ¶¶ 18; Steer Decl. ¶ 18).

"'The general rule for measuring damages for breach of contract . . . is the amount necessary to put the plaintiff in the same economic position he would have been in had the [d]efendant fulfilled his contract.'" *Burns v. Scott*, 635 F. Supp. 3d 258, 279 (S.D.N.Y. 2022) (quoting *Asesoral Bus. Ptrs., LLC v. Seatech Worldwide Corp.*, No. 19 Civ. 11512 (AJN) (SLC), 2021 WL 6755016, at *5 (S.D.N.Y. Dec. 16, 2021), *R&R adopted*, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022)). In addition, "[i]t is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384 (2d Cir. 2006).

Arch seeks an award of damages based on (1) the unpaid additional premium and (2) the New York state taxes and fees.

The Policy provides that the initial premium amount constitutes a "deposit premium only," subject to "audit and retrospective premiums." (Policy at 51 § IV ¶ 5(b); *see also id.* at 36 § C). And the Policy's Common Policy Conditions additional

endorsement provides that the designated premium is a "minimum and deposit premium," which may be modified after the close of the audit period to include "any premium adjustments." (*Id.* at 38).

The initial premiums were based on information submitted directly by Selmanaj and/or its insurance agent/broker regarding Selmanaj's estimated exposure. (Compl. ¶ 9). That calculation estimated total payroll and costs at $921,473. (Supp. Decl. ¶ 27; Audit at 1).

Through the audit, Arch determined that Selmanaj's payroll costs differed from the estimated amounts. Specifically, Arch found, based on its review of the amounts paid to Selmanaj's contract laborers, that the total payroll costs were $1,285,508.95. (Supp. Decl. ¶¶ 29–31; Audit at 1, 6–7). Accordingly, based on its calculations provided rounded to the nearest dollar, and as confirmed by the Court, this difference in payroll costs resulted in an additional premium of $134,004. (Supp. Decl. ¶¶ 32–41). Accordingly, as in other cases where a defaulting defendant has failed to pay Arch an additional premium resulting from an audit, the undersigned recommends that Arch be granted $134,004 for breach of contract. *See, e.g.*, *Arch Specialty Ins. Co. v. M. Lopez Contracting Corp.*, No. 19 Civ. 7024 (DLI) (PK), 2021 WL 7830147, at *5 (E.D.N.Y. Mar. 10, 2021), *R&R adopted*, Docket Entry at March 31, 2021 (E.D.N.Y. Mar. 31, 2021); *Arch Specialty Ins. Co. v. All Island Bldg. & Restoration Inc.*, No. 19 Civ. 2396 (JS) (SIL), 2020 WL 6321964, at *4 (E.D.N.Y. May 2, 2020), *R&R adopted*, 2020 WL 4783357 (E.D.N.Y. Aug. 18, 2020).

However, Arch should not be awarded New York state taxes and fees.

Arch's Complaint alleges that Selmanaj was "obligated" to pay a New York State Surplus Lines Tax and a New York State Stamping Fee. (Compl. ¶¶ 14–15). In particular, Arch alleges that it is owed a 3.6% fee on the additional premium under New York Insurance Law § 2118(d)(1), and a .17% stamping fee on the additional premium under New York Insurance Law § 2130(f). (Supp. Decl. ¶¶ 42–48; Compl. ¶ 14).

Arch has not, however, specifically alleged that it has paid these fees, or that it is required to. And § 2130(f) provides that the stamping fee "shall be paid by the excess line licensee" (*i.e.*, the broker) or "from the insured . . . if the licensee obtains a written memorandum," but does not specify whether the insurer is required to pay such fees for the broker in the event of the insured's default. Finally, Arch fails to cite any provision of the Policy requiring Defendant to pay these taxes and fees to Arch, nor has this Court found any. Nor did Arch's Audit or Audit Endorsement list such taxes and fees as being owed.

Arch is no stranger to this claim being denied on its default judgment applications. "In fact, several courts in this [Circuit] have examined Arch's entitlement to these taxes and fees and have rejected similar claims." *Arch Specialty Ins. Co. v. Lyter Grp., Inc.*, No. 23 Civ. 8146 (NJC) (ARL), 2026 WL 1072102, at *4 (E.D.N.Y. Feb. 17, 2026) (denying claim), *R&R adopted as modified on other grounds*, 2026 WL 791251 (E.D.N.Y. Mar. 21, 2026); *see also Arch Specialty Ins. Co. v. Keltic Kross, Inc.*, No. 24 Civ. 3520 (NCM) (LB), 2025 WL 1309826, at *4

(E.D.N.Y. Jan. 28, 2025) (denying claim because "there are no charges for taxes and fees in the[] audit endorsement nor in any other supporting document tendered to defendant" and "[t]he policy does not itself state that defendant is responsible for state taxes and fees"), *R&R adopted*, 2025 WL 510265 (E.D.N.Y. Feb. 14, 2025); *Arch Specialty Ins. Co. v. Better Energy Serv. Inc.*, No. 20 Civ. 6255 (LDH) (CLP), 2022 WL 5434218, at *6–7 (E.D.N.Y. Aug. 26, 2022), *R&R adopted as modified on other grounds*, 2022 WL 4551379 (E.D.N.Y. Sept. 29, 2022); *M. Lopez Contracting Corp.*, 2021 WL 7830147, at *4 ("Because [Arch] failed to show any agreement by [d]efendant to pay the NYS Taxes and Fees, it has not established entitlement to those fees under a breach of contract claim."); *All Island Bldg.*, 2020 WL 6321964, at *4 ("The invoice does not, however, indicate an amount owed for Taxes and Fees. Nor does the Arch Policy provide that [d]efendant is required to pay Taxes and Fees."). Arch's showing here is no more sufficient. And Arch does not even cite any of these decisions, let alone explain why their reasoning might be inapplicable here.

As such, Plaintiff's request for taxes and fees pursuant to its breach of contract theory should be denied.

**B. Plaintiff's Unjust Enrichment Claim**

Plaintiff brings an unjust enrichment claim against Defendant in addition to its breach of contract claim. (Compl. ¶¶ 19–22). "Unjust enrichment 'lies as a quasi-contract claim' that 'contemplates "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties."''" *Amable v. New Sch.*, 551 F. Supp. 3d 299, 318 (S.D.N.Y. 2021) (quoting *Georgia Malone & Co.*

*v. Rieder*, 19 N.Y.3d 511, 950 N.Y.S.2d 333, 973 N.E.2d 743, 746 (2012)). "The claim is available 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012)).

"New York law does not permit recovery under unjust enrichment where such a claim is duplicative of a breach of contract claim and the court has determined that there is a valid, enforceable contract that governs the same subject matter." *All Island Bldg.*, 2020 WL 6321964, at *3 n.2; *see also Shak v. Aldephi Univ.*, 549 F. Supp. 3d 267, 274 (E.D.N.Y. 2021) ("An unjust enrichment claim is 'not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014))). As the Court has found that Defendant is liable for breach of contract, Arch has no cause of action for unjust enrichment. *See Arch Specialty Ins. Co. v. Hewannora Constr., Inc.*, No. 16 Civ. 4335 (SIL), 2017 WL 11636064, at *5 (E.D.N.Y. Sept. 7, 2017) (denying default judgment as to Arch's unjust enrichment claim as duplicative of breach of contract claim).

**C. Plaintiff's Account Stated Claim**

Similarly, Arch asserts an "account stated" claim on the grounds that although Selmanaj was "indebted to Arch upon an account stated between them, [and] promised to pay Arch the amount owed on demand," Selmanaj failed to do so

despite repeated demands. (Compl. ¶¶ 24–25). In order "to recover on an account stated claim under New York law, the movant must prove the existence of an agreement between the parties based on prior transactions between them." *Samara v. Gangemi & Gangemi*, No. 02 Civ. 1407 (RML), 2005 WL 1076320, at *1 (E.D.N.Y. May 3, 2005) (citing *Carey v. Lau*, 140 F. Supp. 2d 291, 298 (S.D.N.Y. 2001)). However, "a defendant cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed." *Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18 Civ. 4043 (NGG) (SMG), 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019) (citations and quotations omitted), *R&R adopted*, 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019).

Here, as set forth above, the Court finds that Defendant is liable for breach of contract based on its failure to pay monies owed under the insurance Policy. And Plaintiff's claim for recovery under an account stated theory does not differ from its breach of contract claim in terms of the facts alleged or recovery sought. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (holding that claims are duplicative "if they 'arise from the same facts . . . and do not allege distinct damages'" (quoting *Sitar v. Sitar*, 50 A.D.3d 667, 854 N.Y.S.2d 536, 538 (2d Dep't 2008))). Accordingly, the Court recommends dismissing Plaintiff's claim based on an account stated. *See Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19 Civ. 5920 (EK) (PK), 2021 WL 1200329, at *5 (E.D.N.Y. Mar. 9, 2021) ("Plaintiff's account stated claim fails with respect to the Additional Premium because it is duplicative of its breach of contract claim."), *R&R adopted*, 2021 WL

1193004 (E.D.N.Y. Mar. 30, 2021); *Kajavi Corp.*, 2019 WL 3719461, at *3 ("[B]ecause I find that plaintiff is entitled to a default judgment on the breach of contract claim, the account stated claim is precluded.").

**D. Prejudgment Interest**

Arch's complaint seeks "interest," but does not specify the type of interest sought. (Compl. ¶ 18 and at 3). Nonetheless, courts have found that such invocations generally suffice to allege both prejudgment and postjudgment interest. *See, e.g.*, *Koutsoudakis & Iakovou L. Grp., PLLC v. Osman*, No. 22 Civ. 6351 (ER) (SLC), 2024 WL 5284018, at *7 (S.D.N.Y. Dec. 20, 2024), *R&R adopted*, 2025 WL 1184214 (S.D.N.Y. Apr. 23, 2025); *Content IQ, LLC v. Earth.com, Inc.*, No. 22 Civ. 7891 (JGLC) (SN), 2025 WL 3216661, at *3 (S.D.N.Y. July 24, 2025), *R&R adopted*, 2025 WL 3216285 (S.D.N.Y. Nov. 17, 2025). Moreover, the Vilenchik Declaration requests prejudgment and postjudgment interest explicitly and separately (Vilenchik Decl. ¶ 17), as does the Supplemental Vilenchik Declaration (Supp. Decl. ¶¶ 52–53).

"Under New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'" *Elevation Health, LLC v. Sun Grp. Partners LLC*, No. 22 Civ. 10155 (PAE) (VF), 2025 WL 763983, at *4 (S.D.N.Y. Jan. 31, 2025) (quoting *Midwood Junction v. Puerto del Sol Int'l Inv., S.A.*, No. 15 Civ. 5181 (RA) (SN), 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016)). Moreover, N.Y. C.P.L.R. § 5001(a) states that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract,"

and thus "imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000); *see also Katzman v. Helen of Troy Tex. Corp.*, No. 12 Civ. 4220 (PAE), 2013 WL 1496952, at *2 (S.D.N.Y. Apr. 11, 2013) (finding that "[a] long line of case law has held that prejudgment interest is mandatory" in breach of contract cases under New York law).

New York law specifies a 9% rate of prejudgment interest per annum. N.Y. C.P.L.R. § 5004. In a contract case, interest normally accrues from the date of breach. *Nasdaq, Inc. v. Exchange Traded Mgrs. Grp., LLC*, 431 F. Supp. 3d 176, 274 (S.D.N.Y. 2019). Here, the prejudgment award should run from August 28, 2019, the date payment of the additional premium was due. (Steer Decl. ¶ 16; Supp. Decl. ¶ 52).

Thus, the Court recommends awarding Arch prejudgment interest of 9% on the $134,004 unpaid principal from August 28, 2019 until the date that judgment is entered. This equates to $33.04 per day.

**E. Postjudgment Interest**

Finally, postjudgment interest is "mandatory" under 28 U.S.C. § 1961(a). *Schipani v. McLeod*, 541 F.3d 158, 164–65 (2d Cir. 2008) (noting that in a diversity case, "postjudgment interest is governed by federal statute" and that "we have consistently held that an award of postjudgment interest is mandatory"). This is true regardless of whether postjudgment interest is sought by the plaintiff. *See Bleecker v. Zetian Sys., Inc.*, No. 12 Civ. 2151 (DLC) (SN), 2013 WL 5951162, at *2

(S.D.N.Y. Nov. 1, 2013) ("Although the Complaint did not seek relief in the form of post-judgment interest, such relief is mandatory under federal law."). Accordingly, once entered, the judgment will bear postjudgment interest at the federal statutory rate pursuant to 28 U.S.C. § 1961(a).

**F. Costs**

Arch further requests an award of $625.65 for litigation costs. (Compl. at 3, 4; Supp. Decl. ¶¶ 56–57). These costs include $400 in filing fees and $225.65 for costs paid for service of process. (Supp. Decl. ¶ 55).

"Filing fees are recoverable without supporting documentation if verified by the docket." *US All. Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 665 (E.D.N.Y. 2023) (collecting cases); *see also Zak v. Five Tier, Inc.*, No. 20 Civ. 9375 (GBD) (SLC), 2023 WL 11918324, at *13 (S.D.N.Y. Dec. 14, 2023) ("The Court may take judicial notice of the amount of the court filing fee."), *R&R adopted*, 2024 WL 3666371 (S.D.N.Y. Aug. 6, 2024). Although Plaintiff's Supplemental Declaration alleges that it paid a filing fee of $400, the docket indicates that Plaintiff's filing fee was actually $405. (*See* Docket Entry at Dkt. No. 1). Given that the Complaint requests "costs," the Court awards the full $405 paid, which does not exceed the Complaint's request.

Additionally, Plaintiff has provided invoice records for costs of service of the Summons and Complaint on Selmanaj, totaling $225.65. (Vilenchik Decl. Ex. D). Having reviewed these records, the Court finds these costs to be reasonable and recommends awarding them in full. *See Nash v. Countywide Carting, Ltd.*, No. 19

Civ. 9138 (AEK), 2022 WL 602998, at *4 (S.D.N.Y. Mar. 1, 2022) (finding receipts for service of process sufficient to substantiate request for costs); *Zak*, 2023 WL 11918324, at *13 (same).

As such, Plaintiff should be awarded $630.65 for litigation costs.

**G. Attorney's Fees**

The default rule in the United States is that "each party . . . bear[s] its attorney's fees." *Hallinan v. Republic Bank & Trust Co.*, 519 F. Supp. 2d 340, 354 (S.D.N.Y. 2007) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 269–71 (1975)). However, "[u]nder New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 175 (2d Cir. 2008).

Here, Plaintiff's Complaint requests attorney's fees. (Compl. ¶¶ 18, 22, 26). However, none of its initial or supplemental declarations address the issue, nor does Arch provide an accounting of attorney's fees for calculation. Accordingly, Arch has waived this request. *See, e.g.*, *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 15 Civ. 1695 (ARR), 2015 WL 1529653, at *13 n.5 (E.D.N.Y. Mar. 31, 2015) (finding request for prejudgment interest waived where it was requested in the complaint but not in the motion for default judgment); *Reyes v. Tacos El Gallo Giro Corp.*, No. 20 Civ. 3474 (EK) (SJB), 2022 WL 940504, at * n.11 (E.D.N.Y. Jan. 25, 2022) ("This relief is not sought in [plaintiff's] motion for default judgment, thus, the Court concludes that the request for this particular relief has been abandoned."), *R&R adopted*, 2022

WL 939769 (E.D.N.Y. Mar. 29, 2022). Moreover, the Court's review of the Policy finds no provisions awarding Arch attorney's fees for litigation in the event of breach. As such, even if Arch had not waived this request, it would not be entitled to attorney's fees in this action.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that: (1) Defendant Selmanaj Corporation be found liable for breach of contract; (2) Plaintiff Arch Specialty Insurance Company be awarded damages of $134,004, plus prejudgment and postjudgment interest, and costs of $630.65; and (3) all of Arch's other claims and requests for damages be denied. Plaintiff shall promptly serve Defendant with a copy of this Report and Recommendation and file proof of such service on the docket no later than September 8, 2026.

DATED: New York, New York
September 1, 2026

GARY STEIN
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a)–(b), (d). Any such objections shall be filed with the Clerk of Court. Any request

for an extension of time to file objections must be directed to the Honorable John G. Koeltl. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP* v. *Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).